**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | |
|---|---|
| Ohio Farmers Insurance Company, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>)<br>Graham Construction Services, Inc. )<br>)<br>Defendant and )<br>Cross-Defendant, )<br>)<br>vs. )<br>)<br>Central Trenching, Inc. )<br>)<br>Defendant, )<br>Cross-Claimant, and )<br>Third Party Plaintiff, )<br>)<br>vs. )<br>)<br>Travelers Casualty and Surety Company )<br>of America, as surety for I.C.S., Inc. )<br>and as surety for Graham Construction, )<br>Inc., )<br>)<br>Third Party Defendant. ) | **ORDER DISMISSING COMPLAINT,<br>CROSSCLAIM, AND<br>THIRD-PARTY COMPLAINT**<br><br><br>Case No. 4:12-cv-021 |

Before the Court are three dispositive motions seeking to dismiss, transfer, or stay all the claims in this case. The Court grants the motions for the reasons set forth below.

**I.      BACKGROUND**

This dispute arises out of the construction of a freshwater intake structure on Lake Sakakawea near Parshall, North Dakota ("Parshall Project"). I.C.S., Inc. d/b/a Industrial Contract

Services, Inc. ("ICS") initially agreed to build the intake structure for the City of Parshall. ICS then assigned the construction of the intake structure to Graham Construction Services, Inc. ("Graham Construction"). Graham Construction entered into a subcontract agreement with Central Trenching Inc. ("Central Trenching") to perform directional drilling along with other services at the Parshall Project. See Docket No. 14-1. All of the construction companies obtained payment or performance bonds. Travelers Casualty and Surety Company of America ("Travelers") provided payment bonds to ICS and Graham Construction. Central Trenching obtained a performance bond from Ohio Farmers Insurance. See Docket Nos. 1-1; 14-1, p. 11. The record reveals that during the work at the Parshall Project a dispute arose between Graham Construction and Central Trenching. This complex litigation followed.

On February 23, 2012, Ohio Farmers Insurance, the surety to Central Trenching, filed a "Complaint for Declaratory Judgment" against Graham Construction and Central Trenching. See Docket No. 1. Ohio Farmers Insurance seeks a declaration that the surety company has no obligation to perform at the Parshall Project pursuant to the performance bond. See Docket No. 1, p. 4. Central Trenching filed an answer and crossclaim against Graham Construction, contending that Graham Construction breached the contract, failed to pay accounts stated, and negligently managed the Parshall Project. See Docket No. 14, p. 3. Central Trenching also filed a third-party complaint against Travelers, as surety to ICS and Graham Construction, alleging that Graham Construction failed to pay for work at the Parshall Project and seeking payment pursuant to the Travelers payment bonds. See Docket No. 25. In addition, Graham Construction filed a lawsuit in Minnesota state court against Central Trenching and Midco Diving and Marine Services, Inc. See Docket Nos. 46-1 and 46-2; see also Minnesota Judicial Branch Website, available at

http://pa.courts.state.mn.us/default.aspx (last visited August 14, 2012) (showing Case No. 19HA-CV-12-2886).  Graham Construction alleges Central Trenching breached the contract, and caused delays and damages at the Parshall Project.

Dispositive motions are now before the Court which seek to dismiss, transfer, or stay all of the claims filed in federal court in North Dakota.  Graham Construction filed a motion to dismiss or transfer both Ohio Farmers Insurance's declaratory judgment action and Central Trenching's crossclaims.  See Docket No. 18.  Travelers, as surety to Graham Construction, filed a motion to dismiss, or in the alternative stay, Central Trenching's third-party complaint.  See Docket No. 44.  Travelers, as surety to ICS, filed an identical motion to dismiss or stay the third-party claims.  See Docket No. 60.

## II.  LEGAL DISCUSSION

### A.  OHIO FARMERS INSURANCE DECLARATORY ACTION

Graham Construction essentially contends that Ohio Farmers Insurance's declaratory action should be dismissed because the complaint fails to set forth a justiciable controversy.  A federal court's jurisdiction to issue a declaratory judgment is limited to "cases and controversies."  Marine Equip. Mgmt. Co. v. United States, 4 F.3d 643, 646 (8th Cir. 1993).  The Declaratory Judgment Act states: "In a case of *actual controversy* within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201 (emphasis added).  Discussing the justiciable controversy standard in the context of a declaratory judgment action, the Eighth Circuit explained as follows:

>The decisions of the Supreme Court have developed a definition of "controversy" that must be applied to the facts of this appeal. In <u>Aetna Life Insurance Co. v. Haworth</u>, [300 U.S. 227, 240-41 (1937)], the Court said,
>
>>A "controversy" in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. (citations omitted)
>
>The difficulty in applying this definition was noted in <u>Maryland Casualty Co. v. Pacific Coal & Oil Co.</u>, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).
>
>>The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

<u>Cass County v. United States</u>, 570 F.2d 737, 739-40 (8th Cir. 1978).

The determinative issue is whether a controversy within the meaning of the Declaratory Judgement Act and Article III of the Constitution exists on the basis of Ohio Farmers Insurance Company's complaint as written. At issue in this dispute is a performance bond. A "performance bond" protects the obligee (Graham Construction) to ensure the completion of the project if the principal (Central Trenching) defaults in the performance of its work. Ohio Farmers Insurance brought its action based on two letters that Graham Construction sent to the surety and Central Trenching. <u>See</u> Docket Nos. 1-2 and 1-3. After reading the letters, it is clear that Graham Construction does not claim that Central Trenching breached the contract and it does not demand

that Ohio Farmers Insurance perform Central Trenching's contractual obligations. In the first letter, Graham Construction states in pertinent part:

> Please understand that Graham expects [Central Trenching] to fully perform its contract. . . . If [Central Trenching] does not perform, it would be a breach of the contract and Graham would look to [Central Trenching] and its surety to complete the project. I am copying [Central Trenching's] performance bond surety on this letter and requesting assurances from Ohio Farmers that [Central Trenching] will be on the job and performing on February 17, 2012 and making acceptable progress at that time.
>
> Graham hopes that we can work through these issues amicably and work together to complete the project as soon as possible. Please contact me to discuss this letter and [Central Trenching's] returning to the project.

See Docket No. 1-2, p. 2. In the second letter, Graham Construction accuses Central Trenching of causing delays and property damage, and tenders a request for indemnification. See Docket No. 1-3.

Ohio Farmers Insurance contends in its complaint that "[t]here is a justiciable controversy between Ohio Farmers, Graham [Construction] and CTI [Central Trenching] as to the extent of any liability or obligations owed to Graham [Construction] under" the performance bond underwritten by Ohio Farmers Insurance. See Docket No. 1, p. 3. The Court disagrees. In the letters referenced above, Graham Construction does not assert that Central Trenching breached the contract. Graham Construction does not demand that Ohio Farmer Insurance perform Central Trenching's obligations at the Parshall Project pursuant to the performance bond. Rather, Ohio Farmers Insurance speculates that Graham Construction will demand the surety to perform at the Parshall Project. However, the Eighth Circuit has cautioned that "[c]ourts should be reluctant to decide cases that require them to speculate on the basis of hypothetical facts." Cass County, 570 F.2d at 741 (citing United Pub. Workers v. Mitchell, 330 U.S. 75, 90 (1947)).

The Court finds that the two letters sent by Graham Construction fail to present an actual controversy concerning Ohio Farmers Insurance's liability under the performance bonds. The Court concludes that Ohio Farmers Insurance Company's declaratory judgment complaint fails to sufficiently allege the existence of a justiciable controversy. The record reveals that there is no case or controversy that is appropriate for declaratory relief at this time. Simply stated, there is no substantial controversy between the parties of sufficient immediacy so as to warrant the issuance of a declaratory judgment. See Butler v. Dowd, 979 F.2d 661, 673 (8th Cir. 1992). The record reveals that Central Trenching is currently working on the Parshall Project. At this stage Ohio Farmers Insurance has pled only a potential claim at best. Graham Construction has simply put Ohio Farmers Insurance on notice that if Central Trenching fails to complete its work, Graham Construction will look to the surety to do so. Accordingly, Ohio Farmers Insurance's request for declaratory relief is not a "controversy" and the complaint is dismissed.

### B.    CENTRAL TRENCHING'S CROSSCLAIMS

Graham Construction also moves to dismiss or transfer Central Trenching's crossclaims based on a forum selection clause. The contract between Graham Construction and Central Trenching provides as follows:

> [Graham Construction] shall have the exclusive and unilateral right, at its option, to require that the venue for any legal action under this Subcontract be in the State of its Incorporation [Minnesota] Superior Court of its choosing, or in the county that the Project is located [Mountrail County, North Dakota], and Subcontractor expressly agrees to [Graham Construction's] exercise of such option.

See Docket No. 14-1, p. 14. The clause uses terms such as "shall" and "require" which indicate the parties intended the clause to be mandatory rather than permissive. "Mandatory forum selection

6

clauses contain clear language showing that jurisdiction is appropriate only in the designated forum. . . . In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do no prohibit litigation elsewhere." K & V. Scientific Co., Inc. v. BMW, 314 F.3d 494, 498 (10th Cir. 2002) (original citation omitted). As the Federal District Court in Minnesota recently found when interpreting an identical forum selection clause, "the fact that Graham [Construction] had the option to choose between courts either in Minnesota or in the county where the project is located does not render the clause permissive." See Docket No. 37-4. The Court agrees and finds the plain meaning of the forum selection clause requires "any legal action under th[e] Subcontract" to be filed in either Minnesota or North Dakota at Graham Construction's sole option. In other words, Graham Construction has the exclusive right to select the forum for any litigation under the contract. Further, the Court finds that Graham Construction exercised its unilateral right pursuant to the forum selection clause by filing an action against Central Trenching in Minnesota state court.

"Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." M.B. Rests., Inc. v. CKE Rests., Inc., 183 F.3d 750, 752 (8th Cir. 1999) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972)). The burden of establishing the non-enforcement of a mandatory forum selection clause is on the party seeking to avoid it. Servewell Plumbing, LLC v. Fed. Ins. Co., 439 F.3d 786, 789 (8th Cir. 2006). A forum selection clause is enforceable unless it would actually deprive the opposing party of its day in court. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 590-95 (1991). There are limited circumstances where a forum selection clause will be found unenforceable:

> Compare McDonnell Douglas Corp. v. Islamic Republic of Iran, 758 F.2d 341, 345-46 (8th Cir.1985) (holding chaotic post-revolutionary conditions in Iran, including

> its ongoing war with Iraq, excused enforcement of clause requiring litigation there) with M.B. Restaurants, 183 F.3d at 753 (enforcing forum selection clause requiring litigation in Utah over plaintiff's objection that he could not afford to litigate there); Afram Carriers, Inc. v. Moeykens, 145 F.3d 298, 303-04 (5th Cir. 1998) (enforcing Peruvian forum selection clause against financially destitute family of deceased security guard); Sun World Lines[, Ltd. v. March Shipping Corp., 801 F.2d 1066, 1068 (8th Cir. 1986)] (reasoning that the "alternative of using depositions of key witnesses provides adequate opportunity for [plaintiffs] to have their fair day in court" in enforcing forum selection clause requiring Missouri company to litigate in Germany).

Servewell, 439 F.3d at 790. Central Trenching has failed to present a justifiable reason not to enforce the parties' agreement which clearly grants Graham Construction the exclusive right to select the forum for litigation, i.e., Minnesota. Accordingly, the Court finds that the forum selection clause contained in the agreement between Graham Construction and Central Trenching is valid and enforceable.[1]

Central Trenching also challenges the scope of the forum selection clause. Central Trenching has alleged a negligence claim in the crossclaim and argues the negligence claim falls outside the scope of the forum selection clause. In general, "[w]hether tort claims are to be governed by forum selection provisions depends upon the intention of the parties reflected in the wording of particular clauses and the facts of each case." Terra Int'l. Inc. v. Miss. Chem. Corp., 119 F.3d 688, 693 (8th Cir. 1997) (original citation omitted). By its terms, the forum selection clause agreed to

---

[1] When there is no mandatory forum selection clause in a bond, and there is a mandatory forum selection clause in a subcontract, courts have said that the forum selection clause in the subcontract controls venue for purposes of suits related to the bond as well. Arrow Plumbing & Heating, Inc. v. N. Amer. Mech. Servs. Corp., 810 F.Supp. 369, 372 (D.R.I. 1993). In Arrow Plumbing, the court permitted enforcement of a forum selection clause in a subcontract against the surety. The court stated:

> A surety generally stands in the shoes of its principal. . . . Although a surety is not a party to a subcontract agreement, its liability under a payment bond is determined by the agreements between its principal and the subcontractor. The surety therefore should have all the benefits *and suffer all the disadvantages* that would accrue to the general contractor under those agreements.

Id. (emphasis added).

8

by the parties applies to "any legal action under this Subcontract[.]" See Docket No. 14-1, p. 14. "[F]orum selection clauses referring to claims 'hereunder' or 'under the agreement' can be broad enough to cover contract-related tort claims." Terra Int'l., 119 F.3d at 694.

In Terra International, the forum selection clause referred only to claims "under the contract." The plaintiff's complaint only alleged tort claims and the plaintiff argued that such claims fell outside the scope of the forum selection clause. In evaluating the merits of the argument, the Eighth Circuit explained that "several courts have offered further guidance on this issue and have articulated variously phrased general rules regarding the circumstances in which a forum selection clause will apply to tort claims." Id. The Eighth Circuit noted three approaches: (1) the Third Circuit Court of Appeals "has indicated that where tort claims 'ultimately depend on the existence of a contractual relationship' between the parties, such claims are covered by a contractually-based forum selection clause"; (2) the Ninth Circuit Court of Appeals has held that "whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract"; and (3) the First Circuit Court of Appeal has held that "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." Id. (citing Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 203 (3rd Cir.), cert. denied, 464 U.S. 938 (1983); Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 514 (9th Cir. 1988); Lambert v. Kysar, 983 F.2d 1110, 1121-22 (1st Cir. 1993)). The Eighth Circuit held that the plaintiff's tort claims were subject to the forum selection clause using the First Circuit's test, concluding the same operative facts alleged in the complaint would give rise to a claim for breach of contract. Id. at 695.

Central Trenching's negligence claim is essentially based on an alleged breach of "an independent foreseeable duty to exercise care in scheduling, coordinating and performing work on the Parshall Project so as to allow CTI's work to proceed in an orderly and timely fashion."  See Docket No. 14, p. 3.  Although Central Trenching alleges that Graham Construction breached an independent duty unrelated to the contract, the company's negligence claim is directly related to the work performed under the contract, and the conduct of Graham Construction at the Parshall Project's worksite.  Applying the Third Circuit's test,  Central Trenching's negligence claim falls within the forum selection clause because the negligence claim depends on the company's contractual relationship with Graham Construction, as the claim alleges that Graham Construction failed to provide a worksite where Central Trenching could timely perform the contracted work.  The Court finds a similar result is reached by applying the First Circuit's test.  Central Trenching alleges that Graham Construction was both negligent and breached the contract.  Both claims rely on the same operative facts concerning work performed on the Parshall Project.  In summary, the Court finds that Central Trenching's negligence claim clearly falls within the scope of the forum selection clause contained in its agreement with Graham Construction.  As such, Central Trenching's crossclaim is dismissed pursuant to the valid and enforceable forum selection clause.

### C.      CENTRAL TRENCHING'S THIRD-PARTY CLAIMS

Travelers Casualty and Surety Company of America, as surety to ICS and Graham Construction, filed motions to dismiss or stay Central Trenching's third-party claims.  Travelers contends that Central Trenching agreed to litigate "any legal action under th[e] Subcontract" in

Minnesota and the third-party claims should similarly be litigated in Minnesota pursuant to the forum selection clause in the underlying agreement.

The Eighth Circuit Court of Appeals has upheld a district court's decision to permit a surety, such as Travelers, to enforce a forum selection clause found in the underlying contract in Servewell Plumbing, LLC v. Fed. Ins. Co., 439 F.3d 786 (8th Cir. 2006). In that case, subcontractor Servewell alleged that the general contractor Summit failed to pay for contracted work. Servewell filed a lawsuit against the general contractor's surety, Federal Insurance. Two distinct forum selection clauses were executed by the parties in Servewell. The payment bond contained a forum selection clause that permitted lawsuits to be filed in the jurisdiction where the project was located, namely in Arkansas. The underlying contract between Summit and Servewell designated Florida as the forum to file actions. Servewell filed its lawsuit in Arkansas pursuant to the payment bond. The surety, Federal Insurance, moved to dismiss Servewell's action arguing the lawsuit should be venued in Florida pursuant to the forum selection clause in the underlying contract. The district court agreed and granted a motion to dismiss, finding the forum selection clause in the underlying contract "was fair and reasonable since 'Servewell freely entered into a contract with Summit providing that any dispute would be litigated in Duval County, Florida, despite the fact that the Project was in Arkansas. Servewell, thus, could anticipate having to litigate in Florida.'" Id. at 788. The Eighth Circuit upheld the decision and found that the district court did not abuse its discretion.

In a similar manner, Central Trenching's third-party claims are based on the general contractor's alleged failure to pay under the contract. Central Trenching and Graham Construction agreed to litigate "any legal actions under th[e] Subcontract" in Minnesota, and as discussed above, this forum selection clause is valid and enforceable. The Court finds that Central Trenching freely

11

entered into the agreement with Graham Construction and could thus anticipate litigating contract disputes, such as those asserted by Central Trenching in the third-party complaint, in Minnesota.

Further, the payment bonds allow the parties to litigate in Minnesota. The payment bonds underwritten by Travelers contain a forum selection clauses which provide "[n]o suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the Work or part of the Work is located[.]" See Docket No. 25-1, p. 3 (ICS payment bond); No. 25-3, p. 3. The phrase "location in which the Work *or part of the Work* is located" indicates the parties intended to permit lawsuits in any jurisdiction where part of the work for the Parshall Project was performed. This interpretation is supported by the initial construction contract executed by ICS and the City of Parshall which defines "work" as follows:

> 51. *Work*—The entire construction or the various separately identifiable parts thereof required to be provided under the Contract Documents. Work includes and is the result of performing or providing all labor, services, and documentation necessary to produce such construction, and furnishing, installing, and incorporating all materials and equipment into such construction, all as required by the Contract Document.

See Docket No. 63-3, p. 9. The primary contract was incorporated by reference into one of the payment bonds. See Docket No. 25-1, p. 3. Graham Construction performed administrative work for the Parshall Project at the company's headquarter in Minnesota, which falls within the broad definition of "work" as such work "includes and is the result of performing or providing . . . documentation necessary to produce such construction[.]" See Docket no. 63-3, p. 9. Thus, the forum selection clauses contained in the payment bonds permit actions, such as Central Trenching's third-party complaint, to be filed in Minnesota.

Central Trenching's third-party complaint essentially sets forth a breach of contract claim, alleging that Graham Construction failed to pay for contracted work. Central Trenching agreed to

litigate "any legal action under this Subcontract" in Minnesota. See Docket No. 14-1, p. 14. As discussed above, Graham Construction has filed a breach of contract claim against Central Trenching in Minnesota. The parties' cross-claims for breach of contract should be litigated simultaneously in the same court. Doing so avoids a waste of judicial resources otherwise expended if the parties' competing contract claims are resolved in separate courts. The forum selection clauses in the payment bonds permit Central Trenching to file claims in Minnesota, and the forum selection clause in the underlying agreement requires that claims be filed in Minnesota. Central Trenching freely entered into the agreement with Graham Construction and could thus anticipate litigating disputes in Minnesota. Central Trenching's third-party claim is dismissed.

### III.    CONCLUSION

The Court has carefully reviewed the record, the parties' filings, and the relevant case law. For the reasons set forth above, the Court **GRANTS** Graham Construction's motion to dismiss (Docket No. 18); **GRANTS** Travelers Casualty and Surety Company of America's motion to dismiss (Docket No. 44); and **GRANTS** Travelers Casualty and Surety Company of America's motion to dismiss (Docket No. 60). The Court **ORDERS** the following:

1) Ohio Farmers Insurance Company's declaratory judgment complaint is dismissed;
2) Central Trenching Inc.'s crossclaim is dismissed; and
3) Central Trenching Inc.'s third-party complaint against Travelers Casualty and Surety Company of America is dismissed.

**IT IS SO ORDERED.**

Dated this 13th day of September, 2012.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court